Irving GOLDMAN, Individually and doing business as Bridgehampton Estates; and S.I.B. Company, Plaintiffs,

v.

McMAHAN, BRAFMAN, MORGAN & CO., a New York Limited Partnership; D. Bruce McMahan, Milton Brafman, and Louis J. Morgan and Victor M. Wexler, Individually and as General Partners of McMahan, Brafman, Morgan & Co.; John G. Lane, Individually and as President of Gill & Duffus Securities, Inc.; and Gill & Duffus Securities, Inc., Defendants.

No. 85 Civ. 2236 (PKL).

United States District Court, S.D. New York.

Feb. 8, 1989.

---

Gold & Wachtel, New York City (William B. Wachtel, Elliot Silverman, Jose P. Sierra, of counsel), for plaintiffs.

Strook & Strook & Lavan, New York City (Marvin G. Pickholz, Andrew R. Kaplan, of counsel), for defendants.

## OPINION AND ORDER

LEISURE, District Judge:

This action involves various claims arising from the sales of partnership interests

in defendant McMahan, Brafman, Morgan & Co. ("MBM") in the early 1980's.

The matter is presently before the Court on a motion by the defendant accounting firm of Oppenheim, Appel, Dixon & Co. ("OAD"), to dismiss plaintiffs' amended complaint ("the Amended Complaint").

OAD, as well as other defendants, moved to dismiss that original complaint in this action.[1] This Court granted that motion in part and denied it in part, and granted plaintiffs[2] leave to amend their complaint to the extent consistent with the Court's opinion. *Goldman v. McMahan*, [1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,354 (S.D.N.Y.1987) [1987 WL 12820].

Plaintiffs subsequently filed their Amended Complaint on September 4, 1987. The present complaint retains the claims pursuant to RICO, §§ 10(b) and 20 of the 1934 Act, § 17(a) of the 1933 Act, New York General Business Law § 352–c and common law fraud. The claims pursuant to the Declaratory Judgment Act and Rule 20 of the 1934 Act, as well as the claim for breach of fiduciary duty, have been dropped against OAD, while a claim for malpractice has been added. In the present motion, OAD moves to dismiss all of plaintiffs' remaining claims against it.

On a motion to dismiss, the factual allegations of the complaint must be accepted as true, *Dwyer v. Regan*, 777 F.2d 825, 828–28 (2d Cir.1985), and the complaint must be construed in the light most favorable to the plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed for insufficiency unless the plaintiff would not be entitled to relief under any set of facts which might support the claims made. The question is not whether the plaintiff will prevail, but

whether he is entitled to offer evidence to support the claims made. *Id.* at 236, 94 S.Ct. at 1686. *See also, Bruce v. Martin*, 691 F.Supp. 716, 721 (S.D.N.Y.1988).

1. SECTION 17(a) OF THE 1933 ACT.

■ Plaintiffs seek to impose liability on OAD, both as principals and as aiders and abettors, under § 17(a) of the 1933 Act. In its prior opinion, this Court did not dismiss plaintiffs' § 17(a) claim. However, consistent with recent and ever-increasing case authority, this Court has subsequently held that no private right of action exists under § 17(a). *See generally, Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 559 n. 3 (2d Cir.1985) (Friendly, J.); *Dubin v. E.F. Hutton Group, Inc.*, 695 F.Supp. 138 (S.D.N.Y.1988). Consequently, plaintiffs' claim under § 17(a) is dismissed.

2. SECTION 10(b) OF THE 1934 ACT AND RULE 10b–5.

Plaintiffs allege that OAD is liable to them, both as principals and as aiders and abettors, for violations of § 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder.

*A. Principal Liability.*

Defendants challenge the sufficiency of the Amended Complaint, by asserting that plaintiffs have failed to allege the requisite scienter element for a § 10(b) claim.

The Second Circuit has enunciated the essential elements of a § 10(b) and Rule 10b–5 claim:

[A] plaintiff must allege that, in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information

---

1. In the original complaint, plaintiffs had alleged that OAD had committed various statutory violations, including violations of: the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.;* Section 17(a) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77q(a); Sections 10(b) and 20 of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. §§ 78j(b) and 78t, and the rules and regulations promulgated thereunder, including Rule 10b–5; the Declaratory Judgment Act, 28 U.S.C.

§ 2201 *et seq.;* and Section 352–c of the New York General Business Law ("G.B.L."). In addition, plaintiffs had asserted common law claims for fraud and breach of fiduciary duty.

2. Irving Goldman, individually and doing business as Bridgehamption Estates, and S.I.B. Company, will hereinafter be referred to collectively as "plaintiffs."

and that plaintiffs' reliance on defendant's actions caused his injury.

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d. 57, 61 (2d Cir.1985) (citations omitted).

In *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1385, 47 L.Ed. 2d 668 (1976), the Supreme Court established that the scienter element of a § 10(b) claim cannot be satisfied by a showing of mere *negligence.* However, in the Second Circuit, "proof of *reckless* conduct will generally satisfy the requirement of scienter in a Section 10(b) claim." *In Re Investors Funding Corp. Sec. Litig.,* 523 F.Supp. 550, 558 (S.D.N.Y.1980) (emphasis added). *Accord, Bozsi Ltd. Partnership v. Lynott,* 676 F.Supp. 505, 511 (S.D.N.Y.1987). An egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of gross negligence which can be the functional equivalent of recklessness. *Jordan v. Madison Leasing Co.,* 596 F.Supp. 707, 710 (S.D.N. Y.1984).

▆▆▆▆ Plaintiffs' 10(b) claims for damages arise from purchases of securities in 1980 and 1981. Amended Complaint ¶¶ 95(a), 96, 107(a), 108. OAD had nothing to do with the activities involving the 1980 purchase of securities.[3] Plaintiffs base their claim on the fact that financial statements prepared by OAD were incorporated into the 1981 offering. Amended Complaint ¶ 36. With regard to scienter, the Amended Complaint summarily states that OAD prepared these financial statements in a grossly negligent and reckless fashion (Amended Complaint ¶¶ 40, 141).

Fed.R.Civ.P. 9(b) mandates that fraud "be stated with particularity." Moreover, [a]lthough Rule 9(b) provides that intent and "other condition of mind" may be averred generally, plaintiffs must nonetheless provide some factual basis for conclusory allegations of intent. These factual allegations must give rise to a "strong inference" that the defendants possessed the requisite fraudulent intent. *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) (citations omitted). In its earlier opinion, this Court noted that plaintiffs had "failed to provide a sufficient basis for the inference that OAD committed fraud with respect to any of its activities prior to 1983." *Goldman,* [1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,354 at 96,821. The Court directed plaintiffs to provide a more adequate factual basis for such an inference in their Amended Complaint.

Despite the Court's admonition, plaintiffs have not added any further factual basis for their allegations that OAD possessed the requisite scienter in preparing the financial statements used in connection with the 1981 offering. For example, plaintiffs allege that OAD "failed to properly audit [McMahan, Brafman, Morgan & Co. ("MBM")]'s books and records," and that "OAD should have, among other things, independently confirmed and verified that transactions through [defendant Gill & Duffus Securities, Inc.] were at arm's length and that MBM had actually put capital at risk in connection with such transactions." Amended Complaint, ¶¶ 40–41.

These allegations do not essentially alter the "boilerplate charges of recklessness and/or fraud" that this Court determined were insufficient in the original complaint. *Goldman,* [1987 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 93,354 at 96,821. At most, the allegations could only support an inference that OAD might have acted negligently, and under no set of facts could these assertions give rise to the required inference of recklessness. While specific intent is not specifically required for Section 10(b) liability in this Circuit, *Ernst & Ernst,* 425 U.S. at 201, 96 S.Ct. at 1385, clearly man-

---

**3.** This fact alone is sufficient to defeat any claims against OAD arising from the 1980 offering. It is well established that to meet the " 'in connection with' requirement [of Section 10(b) ], the 'fraud practiced must have been prior to or contemporaneous with the sale of securities.' " *First Federal Sav. & Loan Assoc. v. Oppenheim, Appel, Dixon & Co.,* 629 F.Supp. 427, 439 (S.D.N.Y.1986), *quoting, Freschi v. Grand Coal Venture,* 551 F.Supp. 1220, 1227 (S.D.N.Y.1982). *See also,* note 4, *infra.*

dates something more than mere negligence.

Absent a factual basis which gives rise to a strong inference of recklessness or *gross* negligence, plaintiffs' conclusory allegations of scienter fail to satisfy the particularity requirement of Rule 9(b). Consequently, plaintiffs' claim of primary liability under § 10(b) and Rule 10b–5 is dismissed as to OAD.[4]

### B. Secondary Liability.

Plaintiffs further allege that OAD "had knowledge of and participated in the fraud perpetrated by MBM upon plaintiffs and [is] therefore secondarily liable as [an aider and abettor] of MBM's violations ..." Amended Complaint, ¶ 104.

The required elements of a claim predicated on aiding and abetting a securities law violation are also well established. As was stated in *Bloor, supra*, a plaintiff bringing an aiding and abetting claim must show:

> (1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party;
> (2) "knowledge" of this violation on the part of the aider and abettor; and
> (3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.

*Id.* at 62. *See also, IIT, Int'l Investors Trust v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980).

■ Additionally, when pleading such a claim, plaintiff must satisfy the particularity requirements of Rule 9(b). *See Kirshner v. Goldberg*, 506 F.Supp. 454, 458 (S.D. N.Y.1981), *aff'd*, 742 F.2d 1430 (2d Cir.

1983); *Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. 1241, 1270 (S.D.N.Y. 1984).

The Supreme Court has not determined whether a reckless disregard of the facts is enough to satisfy the "knowledge" requirement of an aiding and abetting claim. *See Ernst & Ernst, supra*, 425 U.S. at 193–94 n. 12, 96 S.Ct. at 1381 n. 12. In the Second Circuit, recklessness has been found sufficient where "the alleged aider and abettor owes a fiduciary duty to the defrauded party." *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 44 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).[5] Whether, absent such a duty, recklessness could ever satisfy the scienter requirement has not been expressly decided in this Circuit. *See Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 573 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982). Where there is no fiduciary duty, however, the Second Circuit has indicated that the scienter requirement becomes a more substantial concern:

> [I]f the alleged aider and abettor owes a fiduciary duty to the plaintiff, recklessness is enough. If there is no fiduciary duty the "scienter" requirement scales upward—the assistance rendered must be knowing and substantial.

*Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir.1983). *See also, Sirota, supra*, 673 F.2d at 575; *IIT, Int'l Investors Trust v. Cornfeld, supra*, 619 F.2d at 925 (2d Cir. 1980).

In any event, this Court need not resolve the question of whether actual knowledge or recklessness is the minimum level necessary to meet the scienter requirement of an

---

4. Plaintiffs alternatively argue that their "latecomer" liability theory cures defects in the present Amended Complaint with regard to OAD's fraudulent statements in connection with the 1980 and 1981 offerings. Plaintiffs primarily cite *In re Investors Funding Corp. of New York Securities Litigation*, 523 F.Supp. 550 (S.D.N.Y. 1980) in support of such a theory. The Court notes that that case explicitly did *not* decide the applicability of a latecomer theory to Section 10(b) claims, and the Court there observed that such a theory would be inconsistent with the "in connection with" element of a § 10(b) violation. *Id.* at 557. *See*, note 7, *infra*.

5. The fiduciary duty exception is not implicated in this motion. In its prior opinion, the Court dismissed plaintiffs' claim against OAD for breaching a fiduciary duty to MBM, finding that plaintiffs had failed to allege facts from which such a fiduciary relationship could be inferred. *Goldman*, [1987 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 93,354, at 96,818. Although the Court granted plaintiffs leave to provide additional facts from which the Court could find such a duty, plaintiffs instead chose to drop the fiduciary duty claim against OAD from their amended complaint. *See*, Amended Complaint ¶¶ 127–31.

aiding and abetting claim under § 10(b) and Rule 10b–5. As discussed in the preceding section, plaintiffs have not alleged a sufficient factual basis to support an inference that OAD was even reckless in preparing financial statements used in conjunction with the 1981 offering, much less that its conduct was intentionally fraudulent.

Consequently, plaintiffs' claim regarding OAD's liability as an aider and abettor under § 10(b) and Rule 10b–5 is dismissed with prejudice.

### 3. NEW YORK GENERAL BUSINESS LAW § 352–c.

In *CPC International, Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 519 N.Y.S.2d 804, 514 N.E.2d 116 (1987), decided after plaintiffs had filed their Amended Complaint, the New York Court of Appeals held that § 352–c of the New York General Business Law does not create a private cause of action. Plaintiffs concede that, as a result, their § 352–c claim is no longer valid, and it is accordingly dismissed.

### 4. RICO LIABILITY.

▆▆▆ OAD challenges the sufficiency of the RICO claims as embodied in the Amended Complaint in two ways.[6] First, it is argued that any enterprise of which OAD might have been a part lacks the requisite "continuity." Second, assuming the existence of such an unlawful enterprise, OAD claims that it did not "conduct the affairs" of the enterprise. The Court agrees with OAD's position with regard to the second of these arguments.

#### A. *Conducting the Affairs of the Enterprise.*

The law surrounding the RICO statutory frame is a rapidly shifting, evolving corpus, whose practical interpretation presents a continual challenge to the courts. The most recent manifestation of this Circuit's treatment of that much discussed statute has been to turn away from the grafting of judicial restrictions upon the words of the statute itself. *Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir.1989) (*en banc*). In returning to the more fundamental, unadorned intent of Congress, the words of the statute assume primary importance. The RICO statute itself provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, *to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs* through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) (emphasis supplied). In focusing on the statute, gratuitous judicial embellishment is to be avoided. It is just as important, however, for the court not to overlook, or gloss over, the express requirements of the statutory language itself.

In this case OAD has asserted that it did not "conduct" the affairs of the enterprise, which is the first element that must be established to state a claim under RICO. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

This case cannot meaningfully be distinguished from *Plains/Anadarko–P Ltd. Partnership v. Coopers & Lybrand*, 658 F.Supp. 238 (S.D.N.Y.1987). In that case, a certified public accounting firm's performance of typical accounting functions did not support a RICO claim; "The federal statutory requirement that an enterprise be *conducted* by the accused accountants is not satisfied when a professional accountant enters an engagement of finite duration and scope, undertaken for a particular

---

**6.** Plaintiffs argue that this Court's failure to dismiss the RICO claims in the prior opinion should be deemed the law of the case, and the sufficiency of the RICO claims should not be considered at all. The Court notes that the law of the case doctrine is discretionary, *United States v. Melendez–Carrion*, 820 F.2d 56, 60 n. 1 (2d Cir.1987), and that there have been numerous recent developments in controlling Second Circuit RICO law. In this situation, the Court's present evaluation of the Amended Complaint is proper. *Cf., Gilmore v. Shearson/American Express, Inc.*, 668 F.Supp. 314, 317 (S.D.N.Y.1987); C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure* § 4478, at 790 (1981).

client; ..." *Id.* at 240 (emphasis in original). As this Court noted in its prior opinion, plaintiffs "completely fail to allege facts from which this Court could infer that the relationship between MBM and OAD was other than that typically encountered between a client and its accountant." *Goldman,* [1987 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 93,354 at 96,818. This remains true with regard to the amended complaint.

In attempting to distinguish *Plains/Anadarko–P, supra,* plaintiffs point solely to OAD's post–1983 activities. It is true that this Court previously did not dismiss, for lack of particularity under Fed. R.Civ.P. 9(b), fraud claims in the original complaint based on certain post–1983 actions. As noted, those possibly fraudulent acts are not presently claimed to be direct bases for securities fraud. And, more importantly, although the Amended Complaint may allege OAD's involvement in separate instances of common law fraud, these possible frauds could not, as indicated above, mean that OAD "conducted the affairs" of the enterprise.

What the affairs of the enterprise were, as pled, is not entirely clear. With regard to the post–1983 enterprise activities, however, plaintiffs admit that it was the enterprise's purpose to force the plaintiffs either to a) forfeit their investment in MBM, or b) retain their MBM interests and suffer dire tax consequences. Amended Complaint ¶ 83.

OAD could not have shared in these objectives, or used its position in the enterprise to conduct these affairs. The conclusory statement that OAD would continue to profit, apparently through the trickle down of fees from MBM, Amended Complaint ¶ 65, does not create a relationship or identity of the actions of OAD sufficient for it to have "conducted" the affairs of the enterprise. While it is not strictly necessary to have a stake in the enterprise, " '[s]imply committing predicate acts which are unrelated to the enterprise or one's position within it [are] insufficient.' Defendant here did not conduct the enterprise alleged." *Plains/Anadarko–P,* 658

F.Supp. at 240, *quoting, United States v. Scotto,* 641 F.2d 47, 54 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). *See also, United States v. Mandel,* 591 F.2d 1347, 1375 (4th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980) (" 'conduct or participate' language in § 1962(c) require[s] some involvement in the operation or management of the business" ).

### *B. Continuity and Pattern.*

Little discussion need be devoted to defendants' contentions that the claimed enterprise lacked the requisite continuity. The Second Circuit's recent *en banc* decision in *Beauford v. Helmsley,* 865 F.2d 1386 (2d Cir.1989) indicated the required view that must be taken in this Circuit with regard to a continuity inquiry. Defendants relied heavily on an analysis of the enterprise element and the initial panel decision in *Beauford v. Helmsley,* 843 F.2d 103 (2d Cir.1988). That decision was vacated by the *en banc* Court.

*Beauford* redefined and recharacterized the standards for a RICO claim in this Circuit. The focus of the inquiry now centers on the pattern activity requirement, and encompasses the factors of "continuity plus relationship." A pattern requires proof of something more than two isolated acts of racketeering activity, but may be established without proof of multiple schemes, episodes or transactions.

Although the *Beauford* Court rejected the requirement of an open-ended scheme with no demonstrable ending point, a RICO claim must still sufficiently plead a basis to infer that the acts were neither isolated nor sporadic, in other words, that there is some threat of continuity. In the present case this might be a legitimate question; the only properly pled acts by OAD that might conceivably constitute a "pattern" were the statements included in the single Tender Offer of 1984. Unlike the numerous, ongoing condominium offerings and probable amended offerings in *Beauford,* a predicate act by OAD here might present no threat of continuity.

Whether the *Beauford* pattern requirement is satisfied, however, is not determinative in the present case. As noted, OAD did not by its actions "conduct the affairs" of the enterprise, and consequently plaintiff has not stated a claim under the RICO statute.[7]

## 5. COMMON LAW FRAUD AND MAL-PRACTICE.

For the reasons expressed in this Court's discussion of plaintiffs' § 10(b) and Rule 10b–5 claims, plaintiffs' claim against OAD for fraud stemming from plaintiffs' purchases of securities in 1981 is dismissed for failure to comply with Fed.R.Civ.P. 9(b).[8]

As indicated by the above, the remaining federal claims are also presently dismissed against the defendant OAD. In such circumstances, the Court may properly decline to exercise pendent jurisdiction over any state law claims that might remain. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 618–19, 98 L.Ed.2d 720 (1988) ("when the federal-law claims have dropped out of the lawsuit in its early stages and only state law claims remain, the federal court should decline the exercise of jurisdiction"). *See also, Mayer v. Oil Field Systems Corp.,* 803 F.2d 749, 756–757 (2d Cir.1986); *Independent Bankers Ass'n of New York State, Inc. v. Marine Midland Bank, N.A.,* 757 F.2d 453, 464–465 (2d Cir.1985), *cert. denied,* 476 U.S. 1186, 106 S.Ct. 2926, 91 L.Ed.2d 554 (1986). In *Plains/Anadarko–P,* 658 F.Supp. 238 (S.D.N.Y.1987), the pendent state claims were dismissed even though certain federal claims remained.

This Court previously refused to dismiss certain post–1983 fraud claims. To the extent that those claims might exist, they are hereby dismissed without prejudice. Additionally, the state law malpractice claims are similarly dismissed.

## LEAVE TO REPLEAD

■ In the present case, plaintiffs were given adequate time and opportunity to replead their complaint. Unlike the situation where a plaintiff is unaware of the deficiencies in the complaint, this Court's prior Opinion and Order specified the defects to be cured. *Cf., Goldberg v. Meridor,* 567 F.2d 209 (2d Cir.1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978). As plaintiffs have been given the opportunity to properly plead their claims and have not done so, dismissal with prejudice is justified. *See, Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114–15 (2d Cir.1982); *Avnet, Inc. v. American Motorists Ins. Co.,* 684 F.Supp. 814 (S.D.N.Y.1988). With the exception of the pendent state claims noted above, the complaint is dismissed with prejudice as to defendant OAD.

## CONCLUSION

OAD's motion to dismiss the complaint is hereby granted. All claims against OAD are dismissed with prejudice, except that pendent state law claims, to the extent that they might exist, are dismissed without prejudice.

SO ORDERED.

---

7. The parties contest the applicability of "latecomer" liability for civil RICO conspiracies. It is "hornbook law" that such liability theories are valid in the criminal context. *United States v. Gregory,* 611 F.Supp. 1033, 1038 (S.D.N.Y.1985), and the concept has long been applied to the civil antitrust area. *E.g., Dextone Co. v. Building Trades Council of Westchester Cty.,* 60 F.2d 47 (2d Cir.1932).

Since the Court finds that no RICO claim could be stated against OAD, however, the Court need not presently determine whether latecomer liability applies to the civil RICO conspiracy in this case.

8. Additionally, plaintiffs' reliance on *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 545 F.Supp. 1314 (S.D.N.Y.1982), is misplaced. The Court there held that an accountant may be found to have acted recklessly, and thus be liable for common law fraud, where he "fails to follow up any signs of fraud that he discovers in the audit." *Id.* at 1360. Plaintiffs do not allege that OAD *discovered* any signs of fraud during the course of their 1981 audit and refused to investigate them. They merely allege that OAD *should have discovered* such signs during their audit. This is an allegation of negligence, not recklessness.