**AXEL JOHNSON, INC., Plaintiff,**

v.

**ARTHUR ANDERSEN & CO.,
Defendant.**

**No. 89 Civ. 6490(MEL).**

United States District Court,
S.D. New York.

June 4, 1990.

Milberg Weiss Bershad Specthrie & Lerach, New York City, for plaintiff; Jared Specthrie, Michael C. Spencer, Ellen B. Cohn, of counsel.

Curtis, Mallet–Prevost, Colt & Mosle, New York City, for defendant; Eliot Lauer, Benard V. Preziosi, Jr., Brian A. McDonald (Law Clerk), of counsel.

LASKER, District Judge.

Arthur Andersen & Co. ("Andersen") moves to dismiss the securities fraud claim of the complaint for failure to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b), to dismiss the common law claims on the grounds that they are barred by the applicable statutes of limitations, and for a stay of discovery pending determination of the motion to dismiss.

This action arises out of various audits and financial reviews conducted by Andersen's Michigan office for Industrial Tectonics, Inc. ("ITI"), a Michigan corporation, and Axel Johnson Inc. ("Johnson"), a New York company. Johnson alleges that, in connection with its acquisition of ITI in 1982, it relied on Andersen's financial reports and audits of ITI, which proved to be materially false and deceptive because they failed to disclose that ITI's net income and net sales were overstated by several million dollars as a result of undetected defective pricing. Johnson dismissed Andersen as ITI's auditor on September 18, 1985. On December 18, 1985 a former employee of ITI filed a *qui tam* action on behalf of the United States against ITI and Johnson which purported to state violations of the False Claims Act resulting from ITI's submission of allegedly defective cost or pricing data in connection with various government military contracts. The United States assumed prosecution of the action and eventually ITI and Johnson paid the government $14,279,524.00 pursuant to a settlement agreement.

The complaint alleges five claims relating to Andersen's alleged failure to perform its audits of ITI in accordance with generally accepted auditing standards ("GAAS") and to discover and disclose ITI's failure to prepare its financial statements according to generally accepted accounting principles ("GAAP"). Johnson brings some of the claims as assignee of ITI (the "Assignee claims").

## I. THE 10B–5 CLAIM

The sole basis for federal jurisdiction is the First Claim, which alleges that Andersen violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)(1982), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, by knowingly or recklessly failing to disclose that its audits were not performed in accordance with GAAS, and that Johnson relied upon Andersen's audits and ITI's allegedly false reports in determining the price which Johnson paid for ITI's stock.

Andersen argues that the complaint alleges nothing more than simple negligence, and, accordingly, fails to satisfy the requirements of Fed.R.Civ.P. 9(b), that allegations of fraud be pleaded with particularity.[1] According to Andersen, the complaint does not allege any facts giving rise to any inference that Andersen acted with fraudu-

---

1. Fed.R.Civ.P. 9(b) states in relevant part:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

lent intent. *See Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987) (to satisfy Rule 9(b), "factual allegations must give rise to a 'strong inference' that the defendants possessed the requisite fraudulent intent"), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *Ouaknine v. MacFarlane*, 897 F.2d 75, 79–80 (2d Cir.1990).

Specifically, Andersen points to paragraph 23 of the Complaint which states:

> [Andersen's] failures to disclose described in paragraphs 21 and 22 above were knowing or reckless. The bases for this allegation include subsequent review of ITI's books and records and matters uncovered during litigation and negotiation of the claims asserted in the Butenkoff action.

Andersen asserts that this paragraph is conclusory and alleges no facts from which fraudulent intent could be reasonably inferred.

Johnson contends that the complaint's specific allegations of Andersen's failure to comply with basic provisions of GAAS are sufficient to give rise to an inference of gross negligence or recklessness, and that such recklessness satisfies the scienter requirement of Rule 10b–5.

■ In Rule 10b–5 cases "recklessness is sufficient to establish scienter where the plaintiffs are third parties whose reliance upon the accountant's audit or opinion letter is reasonably foreseeable." *Mishkin v. Peat, Marwick, Mitchell & Co.*, 658 F.Supp. 271, 273 (S.D.N.Y.1987). *See Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F.Supp. 256, 259 (S.D.N.Y.1989). In *Goldman* the court stated: "An egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of gross negligence which can be the functional equivalent of recklessness." *Id. See also Jordan v. Madison Leasing Co.*, 596 F.Supp. 707, 710 (S.D.N.Y.1984) ("negligence, if gross, or blindness, although not equiva-

lent to fraud, is sufficient to sustain an inference of fraud").

■ In this case the complaint purports to allege gross negligence and recklessness by Andersen in failing to disclose the several alleged violations of the GAAS. On the face of the complaint, it is difficult to determine whether these allegations constitute "[a]n egregious refusal to see the obvious, or to investigate the doubtful," 706 F.Supp. at 259, and are thus sufficiently specific to meet the requirements of Rule 9(b). *See Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982) ("conclusory allegations that defendant's conduct was fraudulent or deceptive" not sufficient under Rule 9(b)). Such a determination necessarily involves some acquaintance with customary professional standards in the auditing business. Moreover, in light of Johnson's right to amend the complaint even if this motion is granted, and the fact that the main purpose of Rule 9(b)—to apprise the defendant of the nature of the claims against which it must defend—appears to have been at least partially achieved in this case, the motion to dismiss is denied with respect to the First Claim on the following conditions: Discovery shall, in the first instance, be limited to the issue of whether Andersen's conduct constituted gross negligence or recklessness and shall be completed by July 2, after which date the defendant may move for summary judgment or to dismiss for failure to state a claim under Rule 10b–5.

## II. THE COMMON LAW CLAIMS

Andersen moves to dismiss the pendent common law claims on the grounds that they are barred by the applicable statutes of limitations.[2]

■ A. *Johnson's Pre–Acquisition Malpractice and Negligence Claim*

Because Johnson is a resident of New York, its direct claims (as distinct from its Assignee claims) are governed by the relevant New York statutes of limitations.

---

**2.** Andersen does not move to dismiss that portion of Johnson's Fifth claim which is based on Andersen's post-acquisition breach of contract, but asserts that that portion of the claim should be litigated in state court.

N.Y.Civ.Prac. L. & R. § 202 (McKinney's 1990). Section 214(6) of N.Y.Civ.Prac. L. & R. (McKinney's 1990) provides that non-medically based actions for malpractice must be commenced within three years of completion of the defendant's work. *Credit Alliance Corp. v. Arthur Andersen & Co.*, 101 A.D.2d 231, 236, 476 N.Y.2d 539, 542–43 (1st Dept.1984) *rev'd on other grounds*, 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985).

With respect to Johnson's claims arising out of events preceding its acquisition of ITI (the "pre-acquisition claims"), Andersen argues that because no contract or implied contract existed between Johnson and Andersen, the three-year period of limitations for malpractice and negligence claims applies and the claims are time-barred. In *Credit Alliance Corp. v. Arthur Andersen*, 122 Misc.2d 1045, 471 N.Y.S.2d 938, 939 (1983), *aff'd*, 101 A.D.2d 231, 236, 476 N.Y.2d 539, 542–43 (1st Dept.1984) *rev'd on other grounds*, 65 N.Y.2d 536, 493 N.Y. S.2d 435, 483 N.E.2d 110 (1985), the court held that an action brought by a party not in privity with the defendant accountant "but whose reliance on the accountant's work was foreseeable and within the accountant's contemplation is essentially an action for negligence [which is] governed, therefore, by a three-year statute of limitations."

Johnson contends that the complaint, paragraphs 34–35, sufficiently alleges that, in connection with Johnson's effort to acquire ITI, Johnson and ITI worked so closely together that they were virtually in contractual privity. However, the complaint alleges only that Andersen owed a duty of care to users of the financial statements it prepared for ITI and that Andersen knew Johnson would rely on such statements in connection with its purchase of ITI stock. Even if true, such allegations are not sufficient to create privity between Andersen and ITI.

Because the pre-acquisition claims of Johnson against ITI do not arise out of a contractual relationship, the six-year statute of limitations for contracts does not apply. The three-year statute of limitations for negligence and malpractice applies and, accordingly, the claims are time-barred.

**B. *Johnson's Post–Acquisition Malpractice and Negligence Claim***

Andersen asserts that those claims for negligence and malpractice asserted by Johnson which arise out of services performed by Andersen for Johnson *after* Johnson's takeover of ITI on December 22, 1982 (the "post-acquisition claims") are time barred because Andersen did no work for Johnson after September 20, 1985, when Johnson terminated Andersen's services, and this action was brought more than three years after that date.

However, as Johnson points out, a recent line of cases have held that New York's six-year period of limitations for contracts applies to malpractice and negligence actions which assert damages to property or pecuniary interests and are based on the defendant's failure to exercise due care in the performance of a contract. *Video Corp. of America v. Frederick Flatto Assoc., Inc.*, 58 N.Y.2d 1026, 462 N.Y.S.2d 439, 448 N.E.2d 1350 (1983). *See also Bernstein v. Crazy Eddie, Inc.*, 702 F.Supp. 962, 985 (E.D.N.Y.1988) (recognizing claim of failure to exercise due care against accountant as sounding in contract, not tort, under *Video Corp.*); *Sinopoli v. Cocozza*, 105 A.D.2d 743, 481 N.Y.S.2d 177, 178 (2d Dept.1984) (six year statute of limitations applies to claim of failure to exercise due care by attorney). In *Cohen v. Goodfriend*, 665 F.Supp. 152, 159 (E.D.N. Y.1987), the court stated:

> [U]nder New York law, a plaintiff may sue a professional, such as an attorney, for negligence and breach of contract based on the failure to use due care, within New York's six year statute of limitations for contract actions as long as the liability asserted "had its genesis in the contractual relationship of the parties." *Baratta v. Kozlowski*, 94 A.D.2d 454, 461, 464 N.Y.S.2d 803, 808 (2d Dep't 1983) (quoting *Sears, Roebuck & Co. v. Enco Associates*, 43 N.Y.2d 389, 396, 401 N.Y.S.2d 767, 771, 372 N.E.2d 555, 558 (1977)). To avail himself of this longer

period it is not necessary that a plaintiff plead a contractual theory of liability or that there be an express agreement between the parties for the professional to use due care in the performance of services.

Johnson's post-acquisition claims clearly have their "genesis in the contractual relationship of the parties," because Johnson was a client of Andersen's for three years following Johnson's acquisition of ITI. For this reason, and because Johnson seeks pecuniary damages for those post-acquisition claims, New York's six year limitations period applies and the claims are not time-barred.

### C. The Assignee Claim of Negligence and Malpractice

■ Andersen argues that all of the Assignee claims asserted by Johnson are barred by the applicable Michigan statute of limitations.[3]

Johnson concedes that the relevant statutes of limitations for its Assignee claims based on negligence and professional malpractice, Mich.Comp.Laws.Ann. §§ 600.-5838, 600.5805(4), require that an action be instituted within two years of the date on which the defendant ceased to provide services or six months from the date on which plaintiff discovered or should have discovered the claim, whichever is later. Andersen argues that because it ceased to provide services to ITI on September 20, 1985, when Johnson advised Andersen that ITI was switching to another auditing firm, the limitations period expired on September 20, 1987 and, accordingly, Johnson's action is time-barred because it was filed in 1989.

Johnson responds that it did not and could not have discovered its damages until June 1989, when Johnson and ITI settled the action brought on behalf of the United States—relating to defective pricing by ITI—pursuant to which they paid the government more than fourteen million dollars. The complaint in this action was filed on September, 29, 1989, less than six

months later. Accordingly, Johnson asserts that the claims are timely filed. Andersen contends that Johnson knew that it had suffered some damages as early as November, 1985, when it was charged by the government with defective pricing practices.

Under Michigan law:

[A] malpractice claim accrues only when all the necessary elements of a cause of action have occurred, including damages. *Luick v. Rademacher,* 129 Mich.App. 803, 342 N.W.2d 617 (1983). It is the fact of identifiable and appreciable loss, and not the finality of monetary damages, that gives birth to the cause of action. *Id.*

*Dowker v. Peacock,* 152 Mich.App. 669, 394 N.W.2d 65, 66 (Mich.App.1986). In *Dowker* plaintiff filed a complaint on August 9, 1984 against his attorney for malpractice arising out of a lawsuit which the attorney had filed on plaintiff's behalf against Wayne Harding and a claim of lien on Harding's property in February 1980. The lien proved to be defective and the attorney withdrew it in April 1980. Plaintiff dismissed the attorney on March 1, 1982, and hired another attorney. The plaintiff's case against Harding went to trial in June 1984 but on June 15, 1984 Harding filed for bankruptcy and listed plaintiff as a creditor.

The *Dowker* court held that only on the date of bankruptcy, when the plaintiff lost his opportunity to secure a judgment against Harding, did the plaintiff suffer any "identifiable and appreciable loss" resulting from the first attorney's failure to file a proper construction lien in 1980. Accordingly, the court held that plaintiff's action against the attorney, filed less than six months after the date of the Harding bankruptcy, was timely. The court stated:

If plaintiff had prevailed in the lawsuit against Wayne Harding, he would have no claim of malpractice against defendants for the defective lien, having suffered no injury. But when Harding's

---

**3.** Because ITI was a Michigan corporation its claims accrued in Michigan and there is no dispute that pursuant to New York's borrowing statute, N.Y.Civ.Prac. L. & R. § 202 (McKinney's 1990), Michigan's statute of limitations applies.

bankruptcy aborted the lawsuit, the defective lien became decisive. Indeed, until the outcome of the circuit court action was known, it could not be ascertained whether plaintiff had suffered any harm by defendants' negligence regarding the construction lien. Had plaintiffs filed a malpractice action against defendants while the lawsuit against Wayne Harding was still in progress, it would have been dismissed as premature.

394 N.W.2d at 67 (citations omitted). Similarly, in this case, until the outcome of the government's investigation was known—the settlement agreement between Johnson, ITI and the government—it could not be said that, within the meaning of Michigan caselaw, Johnson had suffered any "identifiable and appreciable loss" as a result of the alleged malpractice by Andersen. Andersen's argument that Johnson knew it had suffered an appreciable loss in November 1985—when the government initiated its investigation—is unpersuasive. Had the government later dropped its investigation there would have been no appreciable loss. Andersen's argument that Johnson could have determined its losses at any point during the investigation to determine its damages is undercut by *Dowker.*

Moreover, although the legal rationale of *Dowker* appears to be controlling and persuasive, the result is not unfair to Andersen. Under Andersen's view, in order to file its action timely, Johnson would have had to do so before Johnson's settlement with the Government. However, this would have been to Andersen's disadvantage because it could well have been deemed by the Government as an indication of Johnson's liability, thereby greatly reducing any chance that the Government would have dropped or dismissed the charges and increasing the chances that Johnson would have to pay damages to the government and pursue its action against Andersen to recover such damages. In sum, the rule urged by Andersen would require plaintiffs to file a malpractice action when damages are merely speculative and might increase the chances of such damages accruing, to the very detriment of defendants such as Andersen.

Accordingly, the Fourth Claim, the Assignee claim relating to negligence and malpractice, is not time barred.

D. *The Assignee Claim of Breach of Contract*

■ Andersen asserts that the Assignee claim based on breach of contract is time barred. It argues that, under Michigan caselaw, Michigan's two year statute of limitations period for malpractice claims applies to a breach of contract claim when the claim is against a professional for failure to exercise due care, as it is in this case. Because this action was instituted more than two years after the date on which Johnson terminated its contract with Andersen, September 20, 1985, Andersen argues that the period of limitations has expired. Johnson contends that the applicable statute of limitations is Mich.Comp. Laws Ann. § 600.5807(8), which carries a six year limitations period for breach of contract claims.

Under Michigan law, in determining which of two different statutes of limitation applies, "[t]he applicable period of limitations depends upon the theory actually pled when the same set of facts can support either of two distinct causes of action." *Barnard v. Dilley,* 134 Mich.App. 375, 350 N.W.2d 887, 888 (1984). In *Barnard* the court set forth the standard by which to determine the "theory actually pled" for deciding whether Michigan's two-year period of limitations for contracts or the six-year malpractice limitations period applies:

> In her first amended complaint, plaintiff alleged only that a contract to represent her in a specific action was made between her and defendant Dilley. This contract was not a "special agreement" as that term was used in *Stewart v. Rudner,* 349 Mich. 459, 468, 84 N.W.2d 816 (1957). It was not a contract to perform a specific act, but one to exercise appropriate legal skill in providing representation in a lawsuit. Her claim is that damages flowed not from his failure to represent her, but from his failure to represent her adequately. This is a

claim grounded on malpractice and malpractice only. 350 N.W.2d at 888. In *Penner v. Seaway Hosp.*, 169 Mich.App. 502, 427 N.W.2d 584 (1988) the court, following the analysis of *Barnard*, concluded that a complaint which charged "that defendant breached the alleged agreement by failing to properly diagnose the decedent's ailments and render appropriate medical care" was a malpractice action and not a contract action. *Id.* at 587. The *Penner* court relied on the lack of "an agreement to perform any specific act." *Id.* *See also Stroud v. Ward*, 169 Mich.App. 1, 425 N.W.2d 490, 494 (1988) (because plaintiff's damages resulted from inadequate representation by defendant, claim is based on malpractice rather than breach of contract for statute of limitations purposes).

Johnson's argument that the complaint alleges facts adequate to support the existence of the "special agreement" referred to in *Barnard v. Dilley* and *Stewart v. Rudner*, 349 Mich. 459, 468, 84 N.W.2d 816, 823 (1957), is not persuasive. In *Stewart v. Rudner* the court held that an action was better characterized as a contract claim, rather than a malpractice claim, where the complaint alleged a "special agreement" between plaintiff and her obstetrician to perform a caesarean section; the defendant had not simply agreed to deliver plaintiff's child according to general professional standards of care. The court stated:

"The two causes of action are dissimilar as to theory, proof and damages recoverable. Malpractice is predicated upon the failure to exercise requisite medical skill and is tortious in nature. The action in contract is based upon a failure to perform a special agreement. Negligence, the basis of the one, is foreign to the other."

*Id.* 84 N.W.2d at 823 (quoting *Colvin v. Smith*, 276 A.D. 9, 92 N.Y.S.2d 794, 795 (1949)).

Johnson does not state which facts in the complaint indicate the existence of a special agreement to perform a specific act. Indeed, the complaint's fifth claim, alleging breaches of contract, states only that:

[Between 1979 and 1985] ITI and [Andersen] had a contractual relationship with respect to the services agreed to be performed by [Andersen] for ITI.

As part of the contract, [Andersen] agreed to perform its services according to the highest professional standards of due care, and to observe GAAS, GAAP, and the doctrine of fair reporting.

[Andersen's] violations of GAAS, GAAP, and the doctrine of fair reporting . . . constituted breaches of contract.[4]

The relevant portion of the complaint, cited above, alleges merely that the contract between Andersen and ITI was for performance of audit and review services in compliance with the relevant professional standards. There is not any indication of a "special agreement," of the type described in *Barnard*. Accordingly, Michigan's two year limitations period for malpractice applies to Johnson's fifth claim and it is barred because the action was brought more than two years after the termination of Andersen's services by Johnson on September 20, 1985.

\*    \*    \*    \*    \*    \*

In sum, Andersen's motion to dismiss is granted with respect to the Assignee claim of breach of contract and the pre-acquisition claim of negligence and malpractice but is denied with respect to all other claims. Accordingly, the Second claim of the complaint and that portion of the Fifth claim which states Johnson's Assignee contract claim are dismissed. Discovery shall be limited, in the first instance, to the issue of whether Andersen's conduct constituted gross negligence or recklessness and shall be completed by July 2.

It is so ordered.

---

4. Andersen's Notice of Motion, dated Nov. 29, 1989, Exhibit B, Complaint of Axel Johnson, Inc. (Sept. 28, 1989) ("the complaint"), at ¶¶ 55–57.