**AXEL JOHNSON, INC., Plaintiff,**

v.

**ARTHUR ANDERSEN & CO., Defendant.**

**No. 89 Civ. 6490(MEL).**

United States District Court, S.D. New York.

April 30, 1991.

**600**

Milberg Weiss Bershad Specthrie & Lerach, New York City, for plaintiff; Jared Specthrie, Michael C. Spencer, of counsel.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendant; Eliot Lauer, Benard V. Preziosi, Jr., Peter Sullivan, of counsel.

LASKER, District Judge.

Axel Johnson Inc. ("Johnson") alleges that Arthur Andersen & Co. ("Andersen") in 1982 knowingly or recklessly conducted an inadequate audit of a company known as Industrial Tectonics, Inc. ("ITI"), and that Johnson detrimentally relied on that audit when it acquired ITI in that year. Johnson contends that Andersen's conduct violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988), as well as various provisions of state law.

Andersen moves to dismiss the 10b-5 claim for failure to plead fraud with the particularity required by Fed.R.Civ.P. 9(b), and to dismiss the state law claims for lack of federal jurisdiction in the absence of the 10b-5 claim. Andersen also asserts that the 10b-5 claim is time barred.

The motions are denied.

## I.

Johnson acquired ITI in 1982, with Andersen's being the most recent pre-acquisition audit. Following the acquisition, challenges to ITI's pricing of government contracts including two major negotiated orders whose proceeds were reflected in the 1982 audit resulted in payment of a $14.2 million litigation settlement by Johnson as ITI's successor. Johnson's suit alleges that Andersen's pre-acquisition audit of ITI knowingly or recklessly failed to reveal the company's potential liability on these claims in violation of Rule 10b-5.

In a previous motion, Andersen challenged the adequacy, pursuant to Fed.R.Civ.P. 9(b),[1] of Johnson's pleading of the scienter element of its 10b-5 claim. That motion was denied in an opinion dated June 4, 1990 on condition that further discovery be conducted solely as to whether Andersen's conduct amounted to gross negligence or recklessness, after which Johnson would be permitted to move again for summary judgment or to dismiss for failure to state a claim under Rule 10b-5. 738 F.Supp. 772.

Andersen's present motion follows that discovery. While styled as another Rule 9(b) motion, it is also effectively a motion to dismiss under Fed.R.Civ.P. 12(b)(6) by virtue of arguments presented by each party as to the adequacy of Johnson's allegations. Accordingly, Andersen's motion as to the complaint's scienter pleadings cannot prevail if Johnson has alleged conduct which as a matter of law may amount to recklessness under Rule 10b-5 and is sufficiently particularized to meet the requirements of Fed.R.Civ.P. 9(b). Because the characterization of conduct as reasonable or negligent or reckless is essentially factual, the issue raised by the motion is whether a reasonable juror could conclude that the conduct alleged in Johnson's complaint and detailed in an additional statement amplifying its scienter allegations amounted to recklessness under Rule 10b-5. We can-

---

**1.** Fed.R.Civ.P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with partic-ularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

not say that no juror could reach such a conclusion.

In Section 10(b) cases, Fed.R.Civ.P. 9(b) requires the allegation of "facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent." *Cosmas v. Hassett*, 886 F.2d 8, 12–13 (2d Cir.1989).

■ Under Rule 10b–5 "recklessness is sufficient to establish scienter where the plaintiffs are third parties whose reliance upon the accountant's audit or opinion letter is reasonably foreseeable." *Mishkin v. Peat, Marwick, Mitchell & Co.*, 658 F.Supp. 271, 273 (S.D.N.Y.1987). It has been held that "[a]n egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of gross negligence which can be the functional equivalent of recklessness." *Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F.Supp. 256, 259 (S.D.N.Y.1989). *See also Jordan v. Madison Leasing Co.*, 596 F.Supp. 707, 710 (S.D.N.Y.1984) ("negligence, if gross, or blindness, although not equivalent to fraud, is sufficient to sustain an inference of fraud").

Johnson's complaint contains only the following allegation of scienter:

> 23. [Andersen's] failures to disclose described in paragraphs 21 and 22 above were knowing or reckless. The bases for this allegation include subsequent review of ITI's books and records and matters uncovered during litigation and negotiation of the claims asserted in the Butenkoff action.

Following the decision on Andersen's earlier motion in this case, Johnson prepared a "statement in amplification of scienter allegations" to provide a more thorough account of the factual basis for its allegations of scienter than had been made at the time of the previous 9(b) motion. This opinion's factual discussion is drawn from the allegations in Johnson's complaint and additional statement.

ITI derived a substantial portion of its income from bellcrank bearings sold under negotiated government subcontracts. Those contracts were subject to a federal statute and regulations known as "defective pricing" laws,[2] which require suppliers to submit accurate, complete and current cost and pricing data in connection with their "contract pricing proposals." Defective pricing laws allow the government an adjustment in the negotiated price should the information submitted be found to be inaccurate, incomplete or noncurrent. 10 U.S.C. § 2306a, 48 C.F.R. §§ 15.804, 215.-804. Johnson's liability resulted from ITI's pricing practices.

Andersen's 1982 audit reflected an increase in ITI's claimed profits from $3.5 million in fiscal year 1981 to $5.2 million in fiscal year 1982. Johnson alleges that this increase in profits combined with Andersen's knowledge that ITI was up for sale should have put it on notice to look even more closely than usual for suspect profit claims, and that the logical place to look was in the negotiated contracts which were a principal source of ITI's income. Johnson claims that had Andersen inspected the underlying contracts and cost information from ITI's bellcrank bearings line, it would have discovered reported profits of 75% to 89% on bellcrank work orders despite ITI's certification to the government that it would earn only a 13.2% profit on those orders. These orders generated a substantial share of ITI's 1982 profits.

Johnson alleges that Andersen's auditors failed to follow a number of procedures prescribed by the AICPA Industry Audit Guide entitled "Audits of Government Contractors," that Andersen failed to comply with generally accepted auditing standards (GAAS), and that a proper audit would have revealed ITI's defective pricing practices.[3] Johnson contends that those failures triggered its ultimate liability upon its

---

**2.** These include the Truth in Negotiations Act, 10 U.S.C. § 2306a (1988), and regulations pursuant to that statute. 48 C.F.R. §§ 15.804, 215.-804.

**3.** The Audit Guide prescribes in part, "The independent auditor should consider the effects of a

potential determination of defective pricing.... The independent auditor's review typically might include the comparison of cost data in support of a proposal, with cost performance to date to determine the existence of potential defective pricing. Major differences should be

purchase of ITI. It observes that had Andersen reviewed projected cost information and profit levels submitted by ITI with the actual results of contract performance, as was called for by the Audit Guide, Andersen would have discovered actual profits five to seven times greater than those projected. Johnson also observes that a similar discrepancy between projected labor costs per bearing produced and actual labor costs was easily discoverable. These discrepancies, Johnson asserts, were so large that the failure to uncover them or to investigate further was reckless behavior on the part of Andersen.

Andersen objects that Johnson at best has identified evidence of mere negligence, not the fraudulent intent, knowledge or recklessness necessary to support a 10b–5 claim.

However, that argument presents a classic jury question which cannot be decided at this stage of the proceedings. While there is room for disagreement as to whether Andersen's conduct was in fact negligent only, or grossly negligent or reckless, determination of that question belongs to the ultimate factfinder and cannot be disposed of on a motion on the pleadings. *See In re Frank B. Hall & Co.* 693 F.Supp. 1460, 1465 (S.D.N.Y.1988) ("The difference between negligence and gross negligence is not sufficiently clear" to dismiss Section 10(b) claim pursuant to Rule 9(b) where pleadings have identified violations of auditing standards). Johnson has provided a particularized statement of what it perceives to be the inadequacies in Andersen's audit and plausible reasons for characterizing those failures as reckless. Such a statement meets its obligations under the Federal Rules of Civil Procedure.

Andersen also objects that despite Johnson's acquisition of ITI and its resulting access to corporate records and employees, Johnson has failed to provide specific evidence to support its contention that Andersen knew ITI's activities to be covered by defective pricing regulations. According to Andersen, the absence of a specific factual basis indicating Andersen's knowledge of the nature of ITI's business warrants dismissal of the complaint because the GAAS standards Andersen is alleged to have violated apply only to firms with contracts subject to defective price negotiations.

This asserted inadequacy is not fatal because Johnson has alleged that Andersen, which performed annual audits of ITI for a number of years prior to 1982, should as a matter of course have been aware of the nature of ITI's business. Indeed, according to Johnson, if Andersen did not know that ITI engaged in negotiated contracts that lack of knowledge itself might be reckless within the meaning of 10b–5.

Moreover, Johnson observes that it has not yet obtained any discovery from Andersen concerning its records of its 1982 ITI audit. Johnson cannot be held accountable for failing to allege facts, such as how or whether Andersen knew ITI to be covered by certain regulations, which are presently known solely to its opponent.

## II.

■ As an alternate grounds for dismissal of the 10b–5 claim, Andersen argues that Johnson's claim is time-barred by retroactive application of the uniform federal statute of limitations for such actions adopted by the Court of Appeals for this Circuit in *Ceres Partners v. GEL Assoc.*, 918 F.2d 349 (2d Cir.1990), which requires such claims to be filed within one year of discovery and not more than three years after accrual. However, since Andersen made its motion the Second Circuit appears to have rejected retroactive application of *Ceres* in *Welch v. Cadre Capital*, 923 F.2d 989 (2d Cir.1991) (applying the three-pronged test for prospective-only application of new doctrines established in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971)).

*Welch* definitively holds that the first two factors of the *Chevron* test for prospective-only application of *Ceres* are satisfied, namely that *Ceres* reversed past clear precedent and that prospective-only applica-

investigated. The contractor's procedures for compliance, which provide a basis for his signing the Certificate of Current Cost or Pricing

Data, should be reviewed by the independent auditor."

tion of the *Ceres* rule advanced both defendants' interests in repose and potential plaintiffs' interest through notice. *See Varnberg v. Minnick,* 760 F.Supp. 315 (S.D.N.Y.1991). A recent decision in this District nevertheless applied *Ceres* retroactively because "the equities in this action tip the balance in favor of applying *Ceres* ... retroactively." *Id.* That court noted, "There is no basis in the record for inferring that the delay was in reliance on the six-year/two-year limitations period applicable to a § 10(b) claim at that time." *Varnberg,* 760 F.Supp. 315, 328.

It may well be that *Welch* in fact establishes a bright-line rule that *Ceres* is to be applied only prospectively, but that issue need not be reached here because unlike *Varnberg,* Johnson has asserted its knowledge of and reliance on the previous established limitations period in its preparations for filing suit, which began prior to the expiration even of the new, shorter limitations period. *See* Affidavit of Michael C. Spencer, January 4, 1991.

Andersen's motion to dismiss is denied.

It is so ordered.