**CMNY CAPITAL, L.P. and Permal
Capital Partners, L.P.,
Plaintiffs,**

v.

**DELOITTE & TOUCHE, Defendant.**

**No. 91 Civ. 0670 (MJL).**

United States District Court,
S.D. New York.

April 1, 1993.

Order Denying Reargument May 20, 1993.

**154**

Spengler Carlson Gubar Brodsky & Frischling by Herbert B. Max, Norman M. Block, New York City, for plaintiffs.

Shea & Gould by Leon P. Gold, Richard L. Spinogatti, Merrye Piltz Schindler, Alyson M. Weiss, New York City, for defendant.

## OPINION AND ORDER

LOWE, District Judge.

Before this Court is the motion filed July 12, 1991 by Deloitte & Touche ("D & T") to dismiss for failure to state a claim and for failure to plead fraud with particularity. Fed.R.Civ.P. 12(b)(6), 9(b). For the following reasons, D & T's motion to dismiss is denied with respect to plaintiffs' federal securities claim, but granted with respect to plaintiffs' state law negligence claim.

## BACKGROUND

Defendant's motion was referred to Magistrate Judge Naomi Reice Buchwald, who issued a Report and Recommendation ("R & R") on May 29, 1992. Plaintiffs filed objections to the R & R pursuant to 28 U.S.C. § 636(b)(1), and defendants filed a reply to plaintiffs' objections.

The R & R's detailed account of the facts is adopted for purposes of this opinion. A brief recital of the most salient points will suffice. Plaintiffs CMNY Capital, L.P. ("CMNY") and Permal Capital Partners, L.P. ("Permal") brought this suit to recover $6.054 million they invested in Collectors Guild, Inc. ("Guild") between January 1989 and March 1990. Guild went bankrupt in 1990, but its accountant Touche Ross & Co. ("Touche") remains solvent in the guise of successor D & T. During the relevant time period, two of plaintiffs' principals served as directors of Guild.

Plaintiffs allege that Guild fraudulently misrepresented its financial condition to induce their investments.[1] They claim that

---

1. The details of Guild's alleged fraud are set forth at pages 4–5 of the R & R, and at ¶ 16 of plaintiffs' amended complaint:

16. CMNY and Permal subsequently learned that the financial statement which Touche audited contained numerous misrepresentations which, had they been known to CMNY and Permal, would have caused them not to provide the funding. These misrepresentations included the following:

a. [Guild's] inventory, particularly with respect to certain lithographs by the artist Salvador Dali, was overvalued. While the value of the inventory was stated in the September 30, 1988 financials at $5,325,691, the actual value was far less.

b. [Guild] engaged in a number of transactions with related parties which were not disclosed or the related nature of which was not disclosed in the financial statement, including an obligation to make annual payments of $20–30,000 to a company known as E & M Restoration owned by Moe Munn, a relative of [Guild's] president, and had incurred an unrecorded liability of approximately $200,000 to

Touche is liable for their losses because of its conduct in issuing a certified financial statement on or about December 23, 1988 for Guild's 1988 fiscal year, which ended September 30, 1988. Specifically, plaintiffs advance two theories of liability against Touche: (1) liability as an aider and abettor of securities fraud violations under § 10(b) of the Securities Exchange Act of 1934; and (2) liability for negligence under New York State law.

## DISCUSSION

The standards for deciding a motion under rule 12(b)(6) are well-settled. A court's task

is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, . . . the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

In addition to the usual requirements of rule 12(b)(6), a plaintiff bringing a claim under § 10(b) must state with particularity the circumstances of the alleged fraud. Fed. R.Civ.P. 9(b); *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir.1982). Rule

9(b) has been interpreted to require that a plaintiff allege facts that give rise to a "strong inference" of fraudulent intent. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 776 (2d Cir.1991); *Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir.1990); *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989); *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir.1987).

A. § 10(b) Aider and Abettor Liability

1. *Scienter*

Plaintiffs' first claim is that Touche violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and rule 10b–5 of the associated Securities and Exchange Commission regulations. 17 C.F.R. § 240.-10b–5. Plaintiffs do not allege direct violations by Touche; rather, they allege that Touche is liable as an "aider and abettor" of Guild's violations. Liability under § 10(b) and rule 10b–5 requires proof that the defendant acted with scienter. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976). For purposes of rule 12(b)(6), a complaint sufficiently pleads an accountant's liability as an aider and abettor if it charges:

(1) A violation of section 10(b) by the accountant's client;

(2) Knowledge of the client's violation on the part of the accountant; and

(3) Substantial assistance by the accountant in the accomplishment of the violation.

*Decker*, 681 F.2d at 119; *IIT, An Int'l Inv. Trust v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980). These elements are not sharply distinct from one another; the statutory scienter requirement is loosely interwoven among all three. *See IIT*, 619 F.2d at 922.

Anne Stevens, another relative of Guild's president.

c. Fictitious sales were included in the revenues reported in the financial statement, the total of which aggregated over $230,000—that amount being 70% of [Guild's] reported net income in fiscal year 1988. These included two sales of $77,128.50 each to Art Plus, Inc. dated 9/20/88, invoice numbers 479759 and 479760, and four sales of $19,101.25 each to Ellis Marketing Group, Ltd. dated 9/8/88, invoice numbers 479755, 479756, 479757 and 479758. Not only was the amount of each of these year-end invoices significantly greater than the usual invoices issued by [Guild], no

moneys were ever received in payment of these invoices.

d. The value placed on a substantial part of [Guild's] inventory was stated as being the lower of cost or market value. There was no attempt to verify either value and, upon information and belief, there was no basis to establish the cost of such merchandise.

e. [Guild] improperly recorded as revenues orders which had not been shipped, thereby including in the fiscal year 1988 financial statement revenues which would not actually be realized until fiscal year 1989.

Am.Compl. ¶ 16.

Magistrate Judge Buchwald concluded that plaintiffs' complaint does not sufficiently plead scienter on the part of Touche, and recommended that the § 10(b) claim be dismissed. R & R at 14–18. Plaintiffs object to Magistrate Judge Buchwald's conclusion on two grounds. First, they argue that Magistrate Judge Buchwald applied an incorrect standard for pleading scienter. Second, they argue that scienter is a question of fact that cannot be resolved on a rule 12(b)(6) motion.

Scienter, the operative mental state requirement of § 10(b) as that section is interpreted by the Supreme Court, is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst,* 425 U.S. at 194 n. 12, 96 S.Ct. at 1381 n. 12.[2] In this circuit, "reckless conduct will generally satisfy the scienter requirement," *IIT,* 619 F.2d at 923 (emphasis omitted), but "special considerations" apply where aiders and abettors are concerned. "[I]f the alleged aider and abettor owes a fiduciary duty to the plaintiff, recklessness is enough. If there is no fiduciary duty ... the assistance rendered must be knowing and substantial." *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir. 1983) (citations omitted).

Magistrate Judge Buchwald acknowledged that recklessness can satisfy the scienter requirement, but found that plaintiffs' complaint fails to allege recklessness in terms that can give rise to a "strong inference of intent." R & R at 16–17. As noted above, numerous cases in this circuit have recited the "strong inference of intent" language in deciding whether a complaint satisfies rule 9(b) in a § 10(b) action. *Kramer,* 937 F.2d at 776; *Ouaknine,* 897 F.2d at 80; *Cosmas,* 886 F.2d at 13; *Connecticut Nat'l Bank,* 808 F.2d at 962.

■ Rule 9(b) pretermits claims that cannot be supported by strong inferences from the allegations. But rule 9(b) cannot require that those inferences support more than is necessary to state the claims. Rule 9(b) demands a strong inference of "intent" in a § 10(b) case only in the sense that "intent" means "scienter." Scienter is a flexible standard, and rule 9(b) must flex in tandem. Thus, the Second Circuit has reasoned that " 'allegations of scienter are sufficient if supported by facts giving rise to a 'strong inference' of fraudulent intent.' For Rule 10(b)(5) purposes, scienter includes recklessness." *Breard v. Sachnoff & Weaver, Ltd.,* 941 F.2d 142, 144 (2d Cir.1991) (quoting *Ouaknine v. MacFarlane,* 897 F.2d 75, 81 (2d Cir.1990)). The Court went on to find that the plaintiff's allegations established "a relatively strong inference that [the defendant] was reckless." *Id.* It follows that when an alleged aider and abettor is a non-fiduciary, rule 9(b) requires allegations that support a strong inference of assistance that is knowing and substantial. *Armstrong,* 699 F.2d at 91. When an alleged aider and abettor is a fiduciary, rule 9(b) is satisfied by allegations that support a strong inference of recklessness. *Id.*

■ It seems axiomatic to add that a complaint based on fiduciary recklessness must allege the existence of a fiduciary relationship. The existence of such a relationship, however, is not one of "the circumstances constituting fraud" that rule 9(b) requires to be "stated with particularity." Fed.R.Civ.P. 9(b). The complaint need not state the basis of the fiduciary relationship with the same particularity that rule 9(b) would require; it need meet only the usual requirements of rule 12(b)(6).

a. Non-fiduciary Aider and Abettor Liability: Knowing and Substantial Assistance

■ Plaintiffs must show that they have stated a claim of either knowing and substantial assistance (if Touche was a non-fiduciary), or recklessness combined with a fiduciary relationship. Magistrate Judge Buchwald found no strong inference of intent to defraud on the part of Touche. This Court

---

**2.** The Court has expressly left open the question whether recklessness satisfies the scienter requirement. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 378 n. 4, 103 S.Ct. 683, 685 n. 4, 74 L.Ed.2d 548 (1983); *Aaron v. SEC,* 446 U.S. 680, 686 n. 5, 100 S.Ct. 1945, 1950 n. 5, 64 L.Ed.2d 611 (1980); *Ernst & Ernst,* 425 U.S. at 194 n. 12, 96 S.Ct. at 1381 n. 12. It has therefore devolved upon the circuit courts to fashion the role, if any, that a recklessness standard can play in establishing liability under § 10(b).

agrees as far as non-fiduciary liability is concerned; the complaint fails to support a strong inference of assistance that is knowing and substantial.

The pertinent parts of the complaint aver as follows:

11. Max Munn, President of [Guild], contacted Touche and notified it that CMNY and Permal were awaiting the audited financial statements and would rely upon them in deciding to provide this funding.

. . . .

19. Touche, as an experienced public accounting firm, knew or should have known that the financial statement contained these misrepresentations since the financial records of [Guild] either contained information which should have led Touche to believe that the information was false or failed to contain necessary information to support the truth of the representation[s], the lack of which a reasonable accounting firm would have questioned and investigated further before rendering an unqualified opinion that the audited financial statement was properly prepared.

20. In its audit of the fiscal year 1988 statement, Touche also manifested gross negligence and recklessness by failing to perform the following audit procedures to ascertain the existence of [Guild's] defalcations:

a. The existence of internal control procedures should have been ascertained to assure the proper recording of transactions. Even the most cursory review would have revealed a singly dominated management unduly aggressive toward financial reporting which had difficulty retaining high quality senior financial personnel.

b. Cut-off procedures for year-end sales should have been reviewed. A physical presence, as well as a review of subsequent shipments to sale dates, would have revealed cut-off problems.

c. Proper confirmation of receivables and subsequent liquidation (vouching of payment) would have disclosed non-pay-

ment or the change to a barter transaction. Touche worked until at least February 1989; and there was enough time to perform their review for such large, material items.

d. Inventory at the public warehouse should have been counted and ownership verified.

e. Inventory value should have been ascertained through vouching payments and reviewing sales for the obsolescence review.

f. Legal payments should have been reviewed and a confirmation letter sent to all attorneys to disclose material litigation.

g. Large and unusual transactions should have been reviewed and followed through to subsequent litigation.

. . . .

24. Touche, by its long standing relationship with [Guild], and by reason of its knowledge that the financial statements were to be relied upon by CMNY and Permal, knew that [Guild] was violating § 10(b) of the Securities and Exchange Act of 1934 or recklessly disregarded the problems identified in the financial records of [Guild] so that knowledge of the violation can be attributed to it.

25. Touche substantially assisted [Guild] to violate § 10(b) of the Securities and Exchange Act of 1934 by rendering its opinion that the 1988 financial statement fairly presents [Guild's] financial situation and was prepared in accordance with generally accepted accounting principals [sic] and by failing to disclose the irregularities in the financial records.

Am.Compl. ¶¶ 11, 19, 20, 24, 25.[3]

Paragraph 19 of the complaint initially appears to satisfy the knowledge requirement, because it couches its allegation in the disjunctive: "knew or should have known." Closer inspection, however, reveals that "the plaintiff can prove no set of facts in support of his claim which would entitle him to re-

---

3. The alleged direct misrepresentations by Guild are found in ¶ 16 of the Complaint. Judge Buchwald found those allegations adequate under rule 9(b) for purposes of establishing a direct violation by Guild, and the parties have raised no objection to that finding.

lief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Paragraph 19 gives the reasons that Touche "knew or should have known" of the misrepresentations:

the financial records of [Guild] either contained information which *should have* led Touche to believe that the information was false or failed to contain necessary information to support the truth of the representation[s], the lack of which a reasonable accounting firm *would have* questioned and investigated further before rendering an unqualified opinion that the audited financial statement was properly prepared.

Am.Compl. ¶ 19 (emphasis added). Plaintiffs' bare allegation of actual knowledge is inconsistent with their accompanying allegations that records "should have led" to Touche's knowledge and that the lack of information "would have" led a reasonable accounting firm to that knowledge.

Taken as a whole, these allegations cannot support a strong inference of knowing and substantial assistance. The inference to be drawn, if any, is that plaintiffs are unable to establish that Touche knew of the misrepresentations. Plaintiffs have failed to state a claim for which relief can be granted against a non-fiduciary accountant.

####   b.   Fiduciary Aider and Abettor Liability: Recklessness

█ Plaintiffs contend that Touche stood as a fiduciary toward them, so that they need to demonstrate only recklessness. The fiduciary relationship and recklessness are separate elements, both of which must be supported by the complaint.

Plaintiffs' allegations support the existence of a fiduciary relationship. Paragraph 11 of the complaint alleges that Touche was told of plaintiffs' impending reliance on the financial statement. This Court has held that "[u]nder Rule 10b–5 'recklessness is sufficient to establish scienter where the plaintiffs are third parties whose reliance upon the accountant's audit or opinion letter is reasonably foreseeable.'" *Axel Johnson, Inc. v. Arthur Andersen & Co.,* 762 F.Supp. 599, 601 (S.D.N.Y.1991) (citing *Mishkin v. Peat, Marwick, Mitchell & Co.,* 658 F.Supp. 271, 273 (S.D.N.Y.1987)). The allegation that Touche knew of plaintiffs' impending reliance sufficiently states a claim that a fiduciary relationship existed.

Plaintiffs' complaint also supports the strong inference of recklessness required by rule 9(b) and rule 10(b)(5). The Second Circuit has defined recklessness as "at the least, conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *see also SEC v. Price Waterhouse,* 797 F.Supp. 1217, 1240 (S.D.N.Y.1992) (recklessness provable by showing that "the accounting practices were so deficient that the audit amounted to no audit at all, or 'an egregious refusal to see the obvious, or to investigate the doubtful'") (citations omitted).

The complaint in the present case does not use the exact language of the *Rolf* decision, but construed favorably to plaintiffs the complaint adequately avers that Touche "must have" known of the danger of Guild's § 10(b) misrepresentations. The Court is careful, in this respect, to distinguish between knowledge of misrepresentations and knowledge of the *danger* of misrepresentations. Although the complaint does not state a claim that Touche knew of the misrepresentations, it adequately states a claim that Touche must have known of the danger. The complaint contains many allegations that, if proved, could support a finding of recklessness.[4] Ac-

---

4.   In addition to the paragraphs set forth earlier, the complaint contains the following:

21.   The above conduct [set forth in paragraphs 19 and 20] violated a number of auditing standards promulgated by the American Institute of Certified Public Accountants, including:

AU § 319.12–§ 319.25 and § 316.09—Failure to obtain an understanding of the internal control structure and the possibility of material misstatements in audit planning.
AU § 331.03—Failure to confirm material accounts receivable.

cordingly, the question of recklessness is not for the Court to decide at this stage of the case. *See Axel Johnson*, 762 F.Supp. at 602 (jury to decide whether alleged conduct was negligent, reckless, or intentional).

The Court concludes that plaintiffs have pleaded § 10(b) fraud by a fiduciary accountant with particularity as required by rule 9(b), and have stated a § 10(b) claim for which relief can be granted against a fiduciary accountant.

### 2. *"Securities"*

■ D & T urges that if dismissal of the § 10(b) claim is not granted on the grounds recommended by Magistrate Judge Buchwald, then dismissal should be granted on the alternate grounds set forth in D & T's moving papers. D & T's first ground is that sixteen of the eighteen alleged securities purchases are really nothing more .than loans, not "securities" within the meaning of the federal securities laws. According to D & T, plaintiffs "were acting just like commercial banks" by making repeated loans to Guild. Rep.Mem. in Supp. of Motion to Dismiss at 24. D & T concedes, however, that the remaining two transactions involved securities. Resp. to Pl's Obj. at 35.

Plaintiffs submit that D & T's concession regarding two of the transactions is enough to undermine this ground for dismissal. Magistrate Judge Buchwald agreed, R & R at 7 n. 6, and this Court also agrees. D & T may well have a meritorious defense to a number of the transactions based on their nature, but that is a matter more properly resolved by, for example, a motion for partial summary judgment.

### 3. *Reliance*

■ D & T's second alternative ground for dismissal of the § 10(b) claim is that plaintiffs cannot have relied upon the Touche financial statement, because two of plaintiffs' principals were Guild directors. According

to D & T, investors who have access to a company's financial records must evaluate those records for themselves, not rely on the opinions of outside accountants. Mem. in Supp. of Motion to Dismiss 24–31. Magistrate Judge Buchwald rejected D & T's theory, emphasizing that directors are entitled to rely on certified financial statements by outside accountants. R & R at 20.

■ D & T is correct that the law generally does not recognize fraud where a party had every opportunity to ascertain the facts for itself. But the cases it cites prove that the degree·to which access precludes reliance is a matter of reasonableness dependent upon the identity of the persons having access and the nature of the information at issue. *Jackson v. Oppenheim*, 411 F.Supp. ·659, 668 .(S.D.N.Y.1974) (insider's duty depends on " 'the basis of what a party knows or reasonably should know considering the information to which he had access.' ") (quoting *Harnett v. Ryan Homes, Inc.*, 360 F.Supp. 878, 886 (W.D.Pa.1973)), *aff'd in part, rev'd in part*, 533 F.2d 826 (2d Cir. 1976).

This Court certainly would reject plaintiffs' reliance to the extent they had actual knowledge concerning information they claim was misrepresented, and also to the extent that plaintiffs' directors at Guild reasonably should have known of that information. The problem with D & T's argument is that it is unreasonable to hold corporate directors responsible for the details of a full-blown financial audit, and most of the failures that plaintiff alleges are accounting failures connected with just such an audit. The cases cited by D & T thus are distinguishable, either because they involve personnel who can be held responsible for more detailed information, or because they involve information that is more superficial. *See Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 730 (2d Cir.1984) (personnel having access included negotiators, engineers, executives, attor-

---

AU § 331/14 and § 901—Failure to count and identify ownership of inventory in a public warehouse.

AU § 337.05 and § 337.09—Failure to inquire of a client's lawyer concerning litigation and disclosure of material information.

SAS 60—Failure to inquire into related party transactions.

Am.Compl. ¶ 21.

neys, and accountants); *Jackson*, 411 F.Supp. at 666–67, 668–69 (director held responsible for relatively superficial information).

Again, D & T's contention that access may preclude reliance is generally sound. Access requires a director to go beyond everyday action when investments are being made. But this limitation on reliance is itself limited by the need to keep directors' responsibilities within a reasonable perimeter. The question can be viewed as whether information lies within a reasonable extension of normal directorial responsibility, or instead close to the core of an area of responsibility imposed upon others. The allegations of the present complaint involve many activities that are central to an accountant's function, not a director's function. Am.Compl. ¶¶ 16, 20, 21. Requiring directors to carry out those activities would extend directorial responsibility beyond recognition.

Some of plaintiffs' allegations may involve information that is appropriately charged to the directors. *See, e.g.,* Am.Compl. ¶ 20(a) ("Even the most cursory review would have revealed a singly dominated management unduly aggressive toward financial reporting which had difficulty retaining high quality senior financial personnel."). But most of the complaint is devoted to matters that are not reasonably required of directors. Similarly, Magistrate Judge Buchwald noted that reliance may have been unreasonable after the 1988 financial statement had aged, R & R at 18 n. 13, but plaintiff's reliance was reasonable at least for the initial investments. The Court therefore rejects D & T's contention that plaintiffs were precluded from relying on the certified financial statement.

## B. State Law Negligence

■ Plaintiffs' second claim is brought under state law. The claim alleges that Touche negligently breached a duty of reasonable care owed to plaintiffs, and that plaintiffs relied to their detriment upon the Guild financial statement that Touche audited. Am.Compl. ¶¶ 30–33.

D & T contends that Touche owed no duty of care to plaintiffs under New York law, and that the negligence claim should be dismissed. Magistrate Judge Buchwald agreed

with D & T, and recommended dismissal of the negligence claim. Plaintiffs object, maintaining that Magistrate Judge Buchwald misapplied the law and that they have successfully stated a claim. This Court grants D & T's motion to dismiss the state law negligence claim.

The New York Court of Appeals recited three prerequisites for accountant liability to third parties in *Credit Alliance Corp. v. Arthur Andersen & Co.,* 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985):

> (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance.

65 N.Y.2d at 551, 493 N.Y.S.2d at 443, 483 N.E.2d at 118. Magistrate Judge Buchwald found that plaintiffs failed to demonstrate that the "primary, if not exclusive, end and aim" of the financial report was to provide them with financial information, and that they failed to establish the "contractual or quasi-contractual privity" required by *Credit Alliance.* R & R at 21–22.

Plaintiffs contend that Magistrate Judge Buchwald's emphasis on the "end and aim" of the report was an erroneous departure from *Credit Alliance.* This Court finds it unnecessary to decide the question as posed by plaintiffs, because an intervening decision by the New York Court of Appeals has clarified the law in general and the insufficiency of plaintiffs' complaint in particular. In *Security Pacific Business Credit, Inc. v. Peat Marwick Main & Co.,* 79 N.Y.2d 695, 586 N.Y.S.2d 87, 597 N.E.2d 1080 (1992), the Court of Appeals explained that New York law requires plaintiffs to demonstrate "a relationship or bond with the once-removed accountants 'sufficiently approaching privity' based on 'some conduct on the part of the accountants.'" 79 N.Y.2d at 702–03, 586 N.Y.S.2d at 90, 597 N.E.2d at 1083. Various conduct might be relevant to such a demon-

stration: communication with the third party, a specific agreement to prepare a report for the third party's use or according to its requirements, or even a mere awareness that "a primary, if not the exclusive, end and aim of auditing its client was to provide [the lender] with the financial information it required." 79 N.Y.2d at 705–07, 586 N.Y.S.2d at 92–93, 597 N.E.2d at 1085–87; *European Am. Bank & Trust Co. v. Strauhs & Kaye,* 65 N.Y.2d 536, 554, 493 N.Y.S.2d 435, 445, 483 N.E.2d 110, 120 (1985). In any event, conduct *by the accountant* is a critical prerequisite.

In *Security Pacific,* there was only one instance of direct contact—a phone call—between the accountants and the plaintiff. *Security Pacific,* 79 N.Y.2d at 705, 586 N.Y.S.2d at 92, 597 N.E.2d at 1085. And that call was initiated by the plaintiff, negating its value as "indispensable linking conduct ... attributable to [the accountant]." 79 N.Y.2d at 705, 586 N.Y.S.2d at 92, 597 N.E.2d at 1085. Further, the financial report itself was prepared in the ordinary course of year-end accounting. 79 N.Y.2d at 706, 586 N.Y.S.2d at 93, 597 N.E.2d at 1086. The accountant's work was not for the particular benefit of the plaintiff, but "for the benefit of [the accountant's] client ... as a 'convenient instrumentality for use in the development of [the client's] business, and only incidentally or collaterally for the use of those to whom [the client] might exhibit it thereafter.'" 79 N.Y.2d at 708, 586 N.Y.S.2d at 94, 597 N.E.2d at 1087.

The *Security Pacific* court distinguished the facts before it from those of *European American,* where there was a "direct nexus" consisting of the parties' "direct communications and personal meetings," 65 N.Y.2d at 545, 554, 493 N.Y.S.2d at 439, 445, 483 N.E.2d at 114, 120, and where those communications and meetings were for "the very purpose of discussing [the plaintiff's] financial condition and [the lender's] need for [the accountant's] evaluation." 65 N.Y.2d at 554, 493 N.Y.S.2d at 445, 483 N.E.2d at 120.

The facts of this case differ in no substantial respect from those in *Security Pacific.* No direct contact whatsoever is alleged between plaintiffs and Touche. Plaintiffs allege that Guild's president "contacted Touche and notified it" that plaintiffs would be relying on the financial report, but this indirect contact is even further removed from "sufficiently approaching privity" than the direct contact between plaintiffs and accountants in *Security Pacific.* Plaintiffs do not allege that the financial reports were prepared for their particular benefit. Indeed, they do not object to Magistrate Judge Buchwald's specific finding that "the 1988 Report was an end of the year audit report filed in compliance with the securities laws." R & R at 22. D & T is not answerable for plaintiffs' incidental and collateral use of that report.

The policy considerations outlined in *Security Pacific* are applicable here as well. " '[T]he small price of a phone call' " should not give a lender " 'additional loan protection [by] placing the auditor in the role of an insurer or guarantor of loans extended to its clients.' " 79 N.Y.2d at 705, 586 N.Y.S.2d at 93, 597 N.E.2d at 1086 (quoting lower court opinion). The borrower rather than the lender placed the call in this case, but that cannot make a difference or the policy would be a facade easily skirted. Surely an accountant's client would appreciate the value of assuring a prospective lender that a properly placed telephone call had backed up the pending transaction with "deep pocket surety coverage." *Id.*

Plaintiffs recognized at the time of filing their objections that the *Security Pacific* decision might clarify New York's law in this area. Pl's Obj. at 15 n.*, 20 n.*. The decision did clarify matters, although not in the way plaintiffs hoped. D & T's motion to dismiss plaintiffs' state law negligence claim is granted.

## CONCLUSION

D & T's motion to dismiss plaintiff's § 10(b) claim is denied.

D & T's motion to dismiss plaintiff's state law negligence claim is granted.

It Is So Ordered.

## ORDER ON REARGUMENT

Before this Court is the motion filed April 16, 1993 by Deloitte & Touche ("D & T") for

reargument of the matters decided in this Court's Order of April 1, 1993. *CMNY Capital, L.P. v. Deloitte & Touche*, 821 F.Supp. 152 (S.D.N.Y.1993). For the reasons set forth below, D & T's motion for reargument is denied.

## BACKGROUND

D & T seeks reargument of its July 12, 1991 motion to dismiss for failure to state a claim and for failure to plead fraud with particularity. This Court denied D & T's motion with respect to plaintiffs' federal securities claim, but granted D & T's motion with respect to plaintiffs' state law negligence claim.

### A. Reargument

■ A motion for reargument may be granted "when new facts come to light or when it appears that controlling precedents were overlooked." *Weissman v. Fruchtman*, 658 F.Supp. 547, 548 (S.D.N.Y.1987). Reargument is not a forum for new theories or for "'plugging the gaps of a lost motion with additional matters.'" *McMahan & Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 727 F.Supp. 833, 833 (S.D.N.Y.1989) (quoting *Lewis v. New York Tel.*, No. 83 Civ. 7129, slip op. at 2, 1986 WL 1441 (S.D.N.Y. Jan. 29, 1986)).

No new facts have come to light in this case. The question whether controlling precedents were overlooked is a closer one. D & T raises precedents that were not discussed in the Court's prior opinion, but those precedents are not *controlling* precedents. D & T's motion is "more an attempt to plug gaps than to bring to the court's attention 'controlling precedents [which] were overlooked.'" *Id.*

D & T nonetheless raises questions about the Court's prior Order—questions that were not overlooked, but that bear additional attention. The Court will follow the path taken in *Carolco Pictures, Inc. v. Sirota*, 700 F.Supp. 169 (S.D.N.Y.1988), and address the merits of D & T's motion. "[I]t would be appropriate to deny reargument on the ground that the requirements of [Local Civil] Rule 3(j) have not been met. However, even

if reargument were granted, it would be unavailing." *Id.* at 170.

### B. Fiduciary Duty and Foreseeable Reliance

In denying D & T's motion with respect to plaintiffs' federal securities claim, the Court followed other decisions of this district holding that "[u]nder Rule 10b-5 'recklessness is sufficient to establish scienter where the plaintiffs are third parties whose reliance upon the accountant's audit or opinion letter is reasonably foreseeable.'" *Axel Johnson, Inc. v. Arthur Andersen & Co.*, 762 F.Supp. 599, 601 (S.D.N.Y.1991) (citing *Mishkin v. Peat, Marwick, Mitchell & Co.*, 658 F.Supp. 271, 273 (S.D.N.Y.1987)); *see also In re Laser Arms Corp. Sec. Litig.*, 794 F.Supp. 475, 491 n. 11 (S.D.N.Y.1989) (collecting cases holding recklessness applicable where reliance foreseeable); *Quintel Corp., N.V. v. Citibank, N.A.*, 589 F.Supp. 1235, 1244 (S.D.N.Y.1984) (same).

■ D & T questions the *Axel Johnson* decision, asserting that "while some courts, like the court in *Axel*, have found that, even in the absence of a fiduciary relationship, recklessness may satisfy the scienter element ... where a third party's reliance is foreseeable, these decisions are at odds with explicit holdings of the Second Circuit Court of Appeals." Mem. in Supp. of Rearg. at 7 (citing *Ross v. Bolton*, 904 F.2d 819, 824 (2d Cir. 1990); *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir.1983); *Quintel*, 589 F.Supp. 1235). That is a misleading characterization of the law. The Second Circuit's most explicit holding on the issue of whether foreseeable reliance permits employment of the recklessness standard is found in *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982), where the Court stated:

> For the imposition of aider and abettor liability under section 10(b) ... we have held that recklessness satisfies the scienter requirement where "the alleged aider and abettor owes a fiduciary duty to the defrauded party[.] ... We have not decided whether recklessness is sufficient in the absence of such a relationship. At least two district court judges have concluded that recklessness may be sufficient, at

least in the case of accountants who know or can reasonably foresee that third parties will rely on their audit or opinion letter.

*Id.* 673 F:2d at 575. The *Quintel* case cited by D & T specifically recognizes this state of affairs. *Quintel,* 589 F.Supp. at 1244 ("[S]everal courts in this district have found recklessness sufficient if reliance by the plaintiff was reasonably foreseeable. The Second Circuit, however, has reserved decision on this point.") (citations omitted). The Second Circuit is indeed explicit: explicitly undecided, that is.

D & T contends that the "foreseeable reliance" relationship does not fit neatly within the Second Circuit's division of § 10(b) defendants into fiduciaries (against whom recklessness may be pleaded) and others (against whom conscious intent must be pleaded). But the Second Circuit has long had the opportunity to vindicate the position now advanced by D & T, and has not done so. Given that history, this Court will continue the course it has followed for well over a decade, and permit pleading of recklessness where reasonably foreseeable reliance is alleged.[1]

Further, the Court is skeptical of the line that has been sketched between fiduciary relationships and foreseeable reliance relationships (although this point is academic in view of the foregoing discussion). The line too closely circumscribes the word "fiduciary." It is difficult to understand the duty that is created by the foreseeable reliance approach—and make no mistake that a duty is created[2]—*except* as a form of fiduciary obligation. Any other understanding is exceedingly semantic and formalistic.

D & T contends that "fiduciary" cannot include persons who are related only by foreseeable reliance. D & T's position admittedly finds some support in precedents like *Sirota* that paint foreseeable reliance relations as a potential second category—distinct from fiduciary relations—for which recklessness satisfies the § 10(b) scienter requirement. *See also, e.g., In re Laser Arms Corp. Sec. Litig.,* 794 F.Supp. 475, 491 n. 11 (S.D.N.Y. 1989) ("The Second Circuit has suggested in dictum that recklessness satisfies the scienter requirement for aiding and abetting liability *absent a fiduciary relationship* where an accountant can reasonably foresee that third parties will rely on its audit or opinion letter.") (emphasis added).

Perhaps there is some utility in maintaining a conceptual distinction between a traditional "fiduciary duty" and a duty not to act recklessly where third party reliance is reasonably foreseeable. But this Court has its doubts. In addition to the narrow definitions cited by defendant, fiduciary relations can be defined as "those informal relations which exist whenever one man trusts and relies upon another." *Black's Law Dictionary* 753 (rev. 4th ed. 1968). The Second Circuit recently confirmed that fiduciary relations include not only

those the law has long adopted—such as trustee and beneficiary—but also more informal relationships where it can be readi-

---

1. The parties in this case have only scratched the surface of the district court precedents in this circuit, which have held to the foreseeable reliance standard for almost fifteen years. *Ades v. Deloitte & Touche,* 799 F.Supp. 1493, 1502 (S.D.N.Y.1992); *Duke v. Touche Ross & Co.,* 765 F.Supp. 69, 75 (S.D.N.Y.1991); *Axel Johnson, Inc. v. Arthur Andersen & Co.,* 762 F.Supp. 599, 601 (S.D.N.Y.1991); *National Union Fire Ins. Co. v. Cooper,* 729 F.Supp. 1423, 1428 (S.D.N.Y. 1989); *Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962, 978 (E.D.N.Y.1988), *vacated in part on other grounds sub nom. In re Crazy Eddie Sec. Litig.,* 714 F.Supp. 1285 (E.D.N.Y.1989); *Stevens v. Equidyne Extractive Indus., 1980, Petro/Coal Program 1,* 694 F.Supp. 1057, 1066 (S.D.N.Y. 1988); *SEC v. Electronics Warehouse, Inc.,* 689 F.Supp. 53, 60 (D.Conn.1988), *aff'd sub nom. SEC v. Calvo,* 891 F.2d 457 (2d Cir.1989), *cert.* denied, 496 U.S. 942, 110 S.Ct. 3228, 110 L.Ed.2d 674 (1990); *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* 660 F.Supp. 1362, 1367 (D.Conn.1987); *Mishkin v. Peat, Marwick, Mitchell & Co.,* 658 F.Supp. 271, 273 (S.D.N.Y.1987); *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 545 F.Supp. 1314, 1356 (S.D.N.Y.1982); *Morgan v. Prudential Group, Inc.,* 527 F.Supp. 957, 961 (S.D.N.Y.1981), *aff'd,* 729 F.2d 1443 (2d Cir.1983); *In re Investors Funding Corp. Sec. Litig.,* 523 F.Supp. 550, 558 (S.D.N.Y.1980).

2. In effect, non-fiduciaries have an obligation not to consciously assist in securities violations, but fiduciaries have an obligation not to recklessly assist those violations.

ly seen that one party reasonably trusted another. Examples of such informal fiduciary relationships found in the writings of scholarly commentators include priest and parishioner, bank and depositor, majority and minority stockholder, and close friends or family members.

*Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 151 (2d Cir.1993).

Neither the plaintiff nor the Court in *Brass* was able to find "any cases in New York or other jurisdictions that have found an informal relationship of trust" in the situation involved in *Brass:* "where a sophisticated prospective investor attends a sales meeting with a [t]heretofore unknown corporate officer." *Id.* The present case is different. Decisions of this Court *have* found an informal relationship of trust, and have imposed a higher standard of care—and a lesser standard of pleading—where reasonably foreseeable reliance on an audit is alleged. It is of little consequence whether the resulting duty is labeled "fiduciary," "quasi-fiduciary," or "informal fiduciary," or whether it is instead identified as *sui generis* by the descriptive "foreseeable reliance" terms now used.

D & T asserts that this Court must follow the law of New York State in determining whether a fiduciary relationship exists, and that New York law compels the conclusion that no fiduciary duty exists. As noted above, the point is academic because the foreseeable reliance standard applies whether or not a fiduciary duty is found; but the Court disagrees with D & T's reasoning nonetheless. D & T points to this Court's dismissal of plaintiffs' state law negligence claim on the ground that no state law duty of due care was owed. According to D & T, plaintiffs err in taking "the anomalous position that, even if D & T owes them no fiduciary duty under New York law, D & T may nonetheless owe them a fiduciary duty under the federal securities laws." Reply Mem. in Supp. of Mot. for Rearg. at 6. D & T contends that such an approach would violate the precepts of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ The Court finds D & T's contentions unconvincing. *Erie* is simply not applicable; it does not require federal courts to weave the interstices of federal statutory law from state law sources. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 159–61 n. 13, 103 S.Ct. 2281, 2287–89 n. 13, 76 L.Ed.2d 476 (1983). D & T quotes the Second Circuit's statement that "the *Erie* doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law." *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 540 n. 1 (2d Cir.1956). But the "issue or claim" here "has its source" in federal securities law, not state law. State law may be a useful, even convincing, guide to whether a fiduciary duty ought to be found in any given case. But that is far from saying that a district court in New York is bound to use New York State's narrowest available conception of fiduciary relations when interpreting the Second Circuit's interpretation of the federal securities laws. Fiduciary relations, for purposes of the federal securities laws, are not necessarily reducible to the formal set found in New York's common law of fraud.

Of course, the courts of this district and circuit *could* have limited the use of recklessness under the federal securities laws to cases in which a defendant owes a fiduciary duty in the formal sense of New York's common law of fraud. But the courts have not done that, and this Court is not presented with a *tabula rasa*. Prior decisions have instead found allegations of recklessness sufficient where either a fiduciary duty was owed or reliance was reasonably foreseeable. The question D & T presents is the merely semantic one of whether this Court will maintain the categorical distinction between fiduciary duties and duties owed as a result of reasonably foreseeable reliance. The Court reiterates its skepticism: the distinction is semantic, formalistic, and tenuous. A more coherent body of law would recognize the fiduciary nature of an implied-in-law (as opposed to agreed-by-contract) duty toward those who foreseeably rely.

■ But resolution of that question is ultimately unnecessary to disposition of this case. The precedents of this district and

circuit compel the conclusion that one who reasonably and foreseeably relies on an accountant's audit can state a claim for a § 10(b) violation by alleging the accountant's recklessness. That is true whether or not the duty is called a fiduciary duty.

Plaintiffs' allegations of reasonably foreseeable reliance effectively state a claim of an informal fiduciary relationship, and permit statement of plaintiffs' claim by pleading recklessness.

### C. Adequacy of Pleading

■■■ D & T also moves for reargument of the adequacy of plaintiffs' pleading of recklessness. D & T's central contention is that accountants are reckless only when they are aware of facts that should prompt them to suspect misrepresentations and they fail to follow up on those facts. This view finds support in some of the prior decisions of this Court. *E.g., The Limited, Inc. v. McCrory Corp.,* 683 F.Supp. 387, 394 (S.D.N.Y.1988) ("Even if Touche should have done more to attempt to uncover and disclose the alleged fraud, without factual allegations tending to establish knowledge of those practices on Touche's part, its 'failure ... [does] not rise above the level of negligence, which is legally insufficient.' "); *see also Griffin v. McNiff,* 744 F.Supp. 1237, 1248 n. 11 (S.D.N.Y.1990); *O'Brien v. Price Waterhouse,* 740 F.Supp. 276, 280 (S.D.N.Y.1990), *aff'd sub nom. O'Brien v. National Property Analysts Partners,* 936 F.2d 674 (2d Cir.1991); *Friedman v. Arizona World Nurseries Ltd.,* 730 F.Supp. 521, 532 (S.D.N.Y.1990), *aff'd,* 927 F.2d 594 (2d Cir.1991).

Against that view must be set other decisions that have recognized the possibility of recklessness where an accountant did not have actual knowledge of facts suggesting fraud, but acted so far outside the bounds of professional behavior that recklessness may be inferred. These cases represent the idea that negligence shades into recklessness as accountants' behavior shifts from unconscious departures from professional standards to "conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care.' " *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38,

47 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

This might at first seem troublesome, blurring the distinctions between negligence, gross negligence, and recklessness. D & T contends along these lines that recklessness requires knowledge of a specific danger of misrepresentation, and that no accountant acts recklessly unless the accountant is aware of specific facts about a client's condition suggesting such a danger. According to D & T, plaintiffs cannot allege just the general danger—present in every case—that something might be wrong.

The problem with D & T's argument is that the Second Circuit's definition of recklessness does not require knowledge of specific danger. The definition instead encompasses those cases where an accountant acts with such disregard for the truth or falsity of the statements being certified that the conduct amounts to recklessness. In effect, the accountant's conduct can itself give rise to a particularized danger of misrepresentation. Thus, the Second Circuit in *Rolf* upheld a finding of recklessness where

> representations were conclusorily made ... without investigation and with utter disregard for whether there was a basis for the assertions. "A representation certified as true ... when knowledge there is none, or an opinion based on grounds so flimsy as to lead to the conclusion that there was no genuine belief in its truth, are all sufficient upon which to base liability." [The brokerage representative's] representations and opinions were given without basis and in reckless disregard of their truth or falsity.

*Rolf,* 570 F.2d at 47–48. This only makes sense. An accountant cannot escape § 10(b) liability by claiming that his certification had no basis whatsoever, as opposed to a basis in suspicious representations. *See SEC v. Price Waterhouse,* 797 F.Supp. 1217, 1240 (S.D.N.Y.1992) (recklessness provable by showing that "the accounting practices were so deficient that the audit amounted to no audit at all, or 'an egregious refusal to see the obvious, or to investigate the doubtful' ") (citations omitted); *Mishkin v. Peat, Marwick, Mitchell & Co.,* 658 F.Supp. 271, 273

(S.D.N.Y.1987) ("One charged with the specific responsibility of a competent professional audit cannot relieve himself of liability by shutting his eyes to what was plainly to be seen.").

Of course, most cases involve accountants who have some professional basis for their conduct. But that underscores the problem: negligence shades into recklessness to the extent that an accountant's conduct loses its basis in acceptable professional behavior. True, the defect in conduct can be fact-specific, as D & T would have it; that is, an accountant can act recklessly by disregarding a "red flag" in a given factual setting. But the defect in professional behavior can also be objective; that is, an accountant can act recklessly by departing so far from ordinary care that the accountant's very disregard creates a heightened and particularized danger that misrepresentations will go unchecked.

As D & T notes, "[t]here is always a general danger, no matter how unlikely, that any financial statement may contain one or more misstatements." Mem. in Supp. of Mot. for Rearg. at 14. D & T fears that "the scienter requirement ... would be eviscerated if this general, unspecified danger were sufficient to state a claim." *Id.* The fear is unwarranted. Recklessness is found not simply where dangers come to fruition, but where dangers come to fruition after accountants certify statements upon conduct that is an extreme departure from ordinary care—a departure so extreme as to amount to "a form of intentional conduct." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976); *In re Fischbach Corp. Sec. Litig.*, No. 89 Civ. 5826, 1992 WL 8715, at *5 (S.D.N.Y. Jan. 15, 1992).

In the present case, plaintiffs allege numerous accounting failures that, construed favorably to plaintiffs as they must be on a Fed.R.Civ.P. 12(b)(6) motion, could support an inference of recklessness. To begin with, certain allegations involve "red flags" of the type that D & T maintains are required before the recklessness standard can be applied: "[f]ictitious sales were included in the revenues reported in the financial state-ment," and· "the amount of each of these year-end invoices [was] significantly greater than the usual invoices," Am.Compl. ¶ 16(c); "[e]ven the most cursory review would have revealed a singly dominated management unduly aggressive toward financial reporting which had difficulty retaining high quality senior financial personnel," *Id.* ¶ 20(a); and D & T was allegedly aware of "[l]arge and unusual transactions." *Id.* ¶ 20(g). Moreover, plaintiffs allege numerous departures from ordinary care that, especially when taken together, would permit a finder of fact to infer that Touche acted recklessly. Am. Compl. ¶¶ 16, 19–21.

The actual conclusion as to recklessness is, of course, to be made by the finder of fact at a later stage of this case.

## CONCLUSION

D & T's motion for reargument is denied.

It Is So Ordered.